UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA  DIVISION

WHITE WAVE INTERNATIONAL
LABS, INC., a Florida Corporation

       Plaintiff,

v.                                             Case No.: 8:09-CV-1260-VMC-TGW

LINDSAY LOHAN, *et al*.,

       Defendants.

_____/

LORIT, LLC'S MOTION FOR FINAL SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF

NOW COMES, Defendant, Lorit, LLC, ("LORIT") by and through its undersigned counsel, and pursuant Rule 56 of the Federal Rules of Civil Procedure, and hereby respectfully moves this Court for summary judgment in its favor on all counts brought by the Plaintiff, White Wave International Labs, Inc., ("Plaintiff"), against LORIT, and in support thereof, makes the following argument.

I.      INTRODUCTION

LORIT is a limited liability company formed in Nevada for the purpose of developing, marketing and selling self tanning products.  LORIT'S business plan was to develop a self tanning spray and have celebrity Lindsay Lohan promote the product.  The involvement of Ms. Lohan was critical to LORIT's success because the self tanning market was saturated with similar products.  See Declaration of Lorit Simon attached hereto as Exhibit "A" ¶ 2.

Because most of the ingredients in self tanning sprays are the same, LORIT endeavored to create a product by picking the non-standard ingredients of her choosing.  To that end, LORIT relied on its managing member, Lorit Simon, to develop the product's ingredients. Ms. Simon has been in

the spray tanning business for more than 10 years and has the required experience and knowledge to pick ingredients that would appeal to the self tanning market.  Exhibit "A" ¶ 3.

In the fall of 2008, LORIT came into contact with the Plaintiff, White Wave International Labs, Inc. and its President, Jennifer Sunday.  Plaintiff is in the business of mixing ingredients of its client's choice and a having a product manufactured for the client. Plaintiff explained to LORIT that that the ingredients it used were standard for the industry, and LORIT's choice of other ingredients were unique to LORIT.  *See* Plaintiff's email of November 28, 2008, attached to Plaintiff's depo. as Exhibit 8.  The Plaintiff held itself out to LORIT as a lab that was capable of delivering a high volume of canisters containing self tanning solution.

In November 2008, LORIT and Plaintiff began to work together to develop the tanning solution and the canister that would dispense it.  Throughout November and December 2008, and January 2009, LORIT and Plaintiff collaborated on the tanning solution's ingredients.  LORIT chose the unique ingredient of Goji berry extract, she approved of the Chardonnay extract and she picked the black coconut fragrance.  Throughout this development process, LORIT and Plaintiff had not entered into any type of confidentiality agreement or contract. Exhibit "A" ¶ 7.

The tanning solution's ingredients list developed by LORIT and Plaintiff was finalized on January 27, 2009. On January 28, 2009, LORIT and Plaintiff entered into a Confidential Agreement Between Firms ("CABF").[1]  (Complaint Dkt. # 1).  The CABF was not intended to protect any information disseminated or shared prior to January 28, 2008.

_____

[1] The contract attached to complaint has a first page dated January 27, 2009; however, this must be a clerical error by the Plaintiff.  Def.'s Exh. 11 to Pl.'s depo. is a copy the contract signed by the Plaintiff on January 27, however, this contract was  not signed by LORIT. As can be seen by a comparison of the signatures on Ex. 11 and the signature page attached to the complaint, the page solely signed by Plaintiff on the 27th (Ex. 11) does not match the signature attached to the complaint.  Therefore, the signature page added to the contract attached to the complaint must be from another contract. The signature page attached to the complaint goes with the contract dated January 28, 2009. See Exhibit A ¶9. Plaintiff has made either a clerical error, or, Plaintiff switched the signature page in an attempt to back-date the contract. Also, as is obvious, the signature page attached to complaint doesn't match the other pages of the contract; the signature page is a fax copy, the other pages are not.  Regardless, the complaint pleaded that the CABF was entered into on January 28th and

Plaintiff never expected that the ingredients of the tanning spray would be kept secret.  In November 2008, Plaintiff sent LORIT an email explaining that LORIT and Plaintiff could never expect the ingredient list to be a secret because all of the ingredients were required by law to be disclosed on the product label to be sold to the public. (Pl.'s depo p.80; Def.'s Ex. 8 to Pl.'s depo).

LORIT and Plaintiff were unable to consummate a business deal that would allow Plaintiff to be the wholesale provider of the tanning solution to LORIT.  Thereafter, LORIT hired the Wormser Corporation to handle the production of tanning spray.  Exhibit "A" ¶ 10.  The Wormser Corporation contacted United I International Labs, LLC to produce the tanning spray for LORIT.   The tanning spray was ultimately produced and sold under the name "Sevin Nyne"; a name chosen by Ms. Lohan.  In May 2009, Sevin Nyne was introduced to the market.

In July 2009, the Plaintiff filed the instant five count complaint alleging that the product the Plaintiff and LORIT developed together was really a "trade secret" and that LORIT, and others, misappropriated this secret. [2]  Plaintiff, however, has no evidence to support her claims and merely speculates as to the circumstances that it believes could prove its case. For example, Plaintiff, a chemistry lab, testified that it never performed any tests on Sevin Nyne in order to compare it with her "trade secret."  Instead, Jennifer Sunday, Plaintiff's President, thinks her trade secret was misappropriated because, in her opinion, the two products smell the same.  Remarkably, the Plaintiff never asked any Court to enjoin LORIT from continuing to sell Sevin Nyne.

II.   SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, all of the evidence and factual inferences arising there from should be construed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered

---

this fact was admitted by LORIT.
2 All original defendants, other than Lorit, LLC have been dismissed for lack of personal jurisdiction. Count IV in

on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56. The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of <u>Rule 56(c)</u> mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Anderson</u>, 477 U.S. at 248.

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex</u>, 477 U.S. at 323. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Id. at 324; see also RULE

---

the Complaint does not allege any liability or damages against Lorit, LLC

56. In meeting this burden the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Id. at 587. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Id.

III.   PLAINTIFF IS UNABLE TO SHOW ANY ACTUAL DAMAGES ON ANY OF ITS CLAIMS AGAINST LORIT, LLC

A. **Count I, Breach Of Contract, Plaintiff Failed To Properly Plead Special Damages And Has Waived Its Right To Seek Special Damages, Therefore, Plaintiff Cannot Prove An Essential Element Of This Claim**

Count I of the complaint seeks to recover damages from LORIT alleging that LORIT breached the CABF entered into by the parties.  Under Florida law, the elements of a breach of contract claim are (1) a valid contract, (2) a material breach, and (3) damages. Abruzzo v. Haller, 603 So.2d 1338, 1340 (Fla. 1st DCA 1992). A material breach occurs only when an injured party has sustained a substantial injury due to the breach. Bland v. Freightliner LLC, 206 F.Supp.2d 1202, 1210 (M.D.Fla.2002). A plaintiff may only recover if the damages are a proximate result of the material breach. Chipman v. Chonin, 597 So.2d 363, 364 (Fla. 3d DCA 1992).

Count I merely alleges that Plaintiff has been "damaged" and requests "an award of damages and any and all equitable relief."[3]  After the close of discovery, Plaintiff reveled that it would be pursuing the net profits of LORIT and other as the sole source of damages in this case.

Rule 9(g), Federal Rules of Civil Procedure requires that "[w]hen items of special damages are claimed, they shall be specifically stated." See also 5 Wright & Miller, Federal Practice and Procedure 2d ed. § 1311, at 710-11 (1990).  The court in Leavitt v. Cole, 291 F.Supp. 2d 1338

---

3 Plaintiff is only entitled to equitable relief when there is no adequate remedy at law. Plaintiff has relied on its adequate legal remedy of breach of contract and can offer no evidence that it entitled to any equitable relief.

(M.D.Fla. 2003), emphasized that Rule 9(g) has been "perhaps the best means of ensuring that an unwitting defendant not be blindsided by claims for certain types of damages not explicitly pled." Moreover, special damages "are damages that are unusual for the type of claim in question-that are not the natural damages associated with such a claim." <u>Avitia v. Metro. Club of Chicago, Inc.</u>, 49 F.3d 1219, 1226 (7th Cir.1995).

On May 25, 2012 Plaintiff belatedly served *unverified* answers to LORIT's interrogatories regarding the damages sought in Count I.[4] For the first time in the case, Plaintiff claimed, by way of these interrogatory answers, that it is seeking the special damages for breach of CABF:

> "all sums paid to Lorit LLC and its shareholders, partners, officers and directors pursuant to the sale of the Sevin Nyne product from the date of its first sale to the public until the present, minus the cost of goods sold. Plaintiff is unable to quantify the amount of this monetary relief at this time."

(Exh.    to Pl.'s depo.)

Clearly, the net profits of LORIT, and others, are not the type of recoverable damages set forth in the CABF. Paragraph 9 of the CABF states that the "non-breaching party may seek specific performance or injunctive relief." Although the CABF does not specifically exclude pursuing other "remedies at law or equity" it is silent as to exposing the breaching party to liability for net profits damages. The CABF did not give LORIT notice that it might be sued for this type of special damage. Thus, the Plaintiff was required by Rule 9 to give LORIT notice of its claim for special damages by specifically stating them in the complaint.

---

4 As discussed below, Plaintiff still has not "answered" these damages interrogatories because the response remain unsigned. Moreover, counsel for Plaintiff, Ms. Cohen, attempted to serve a fraudulent verification page for these answers by giving the undersigned a pre-notarized verification page *without* any signature.

Plaintiff has waived its claim to recover special damages by failing to specifically plead them, and therefore, it cannot show any damage as an essential element for Count I and this count should be dismissed.[5]

> **B.**     **Plaintiff's Failure to Disclose Evidence Of Damages During Discovery Requires Dismissal Of Its Damages Claims, Alternatively, LORIT Is Entitled To The Sanction Of Dismissal Of Plaintiff's Claims For Failure To Answer Interrogatories After Being Ordered By The Court And Because Of Plaintiff's Counsel's, Ms. Cohen, Use Of A Fraudulent Pre-Notarized Unsigned Verification Page To Substantiate Plaintiff's Evidence Of Damages**

On March 30, 2012, LORIT hand delivered to Plaintiff a second set of interrogatories and requests for production directed to Plaintiff's claims for damages. Plaintiff failed to serve any response to these discovery requests regarding its alleged damages. On May 16, 2012, LORIT filed a motion to compel responses to these discovery requests.  The Plaintiff again failed to serve any response to these requests.  On May 24, 2012 a hearing was held on LORIT's Motion to Compel Discovery.  This Court entered an Order granting LORIT's motion to compel to the extent that Plaintiff was ordered to respond to the outstanding discovery requests on damages no later than May 25, 2012. (Dkt. #131) On May 25, 2012 Plaintiff served ***unverified*** answers to the damages interrogatories and a response to the request for production, but failed to produce any of the requested documents.

LORIT's Second Set of Interrogatories, 1 through 5, asked the Plaintiff to "describe in detail" for Counts I, II, III and IV, "all monetary relief Plaintiff seeks ..., including the amount and method

---

5 Plaintiff attempts, in its deposition, to salvage its claim for damages by expanding what it claims entitlement to outside of its interrogatory answers, by guessing Plaintiff could be entitled to money, under the CABF, for the unconsummated deal between the parties to purchase the tanning product. The CABF, however, has no bearing, and is completely unrelated to the parties discussions on purchasing a product from the Plaintiff.  In fact, the Plaintiff testified that it and LORIT never came to any agreement on the price LORIT was willing to pay for each canister.  The preliminary discussions between Plaintiff and LORIT reveled that the canisters of tanning spray would cost LORIT somewhere between $3.00 and $4.00 per can.  There is absolutely no evidence that the parties ever discussed Plaintiff's entitlement to any money other than what Plaintiff might have profited on the wholesale price: what LORIT paid and Plaintiff's cost to have the product produced.  Plaintiff, at the time it entered into the CABF and, thereafter, never had any expectation of receiving LORIT's net profits.  As such, Plaintiff never would have been entitled to the benefits of the deals that LORIT made with the retailers of the product.

of computation of each item of monetary relief and the basis of each such computation."  In response to each, the Plaintiff gave the same, incomplete, and *unverified* answer:

> "all sums paid to Lorit LLC and its shareholders, partners, officers and directors pursuant to the sale of the Sevin Nyne product from the date of its first sale to the public until the present, minus the cost of goods sold.  Plaintiff is unable to quantify the amount of this monetary relief at this time."

There are a number of problems with these answers.  First, to be considered an "answer" to an interrogatory, the Plaintiff must have signed it's answers under oath.  Rule 33(b)(3). Plaintiff never signed its answers to LORIT's damages interrogatories. Therefore, Plaintiff has failed to comply with this Court's order, and Rule 33, to *answer* the interrogatories and renders Plaintiff's response a nullity.

Second, Plaintiff's counsel's, Marcia Cohen, attempted to pass-off a fraudulently notarized signature page to support of these answers.  As can be seen from the signature page attached at Plaintiff's deposition, Ms. Cohen had her secretary, Ms. Erickson, pre-notarize the signature page. This practice is clearly improper and, most likely a violation of Florida law.

Finally, the damages interrogatory responses are incomplete.  The interrogatories asked for a computation of each item of monetary relief and the *basis* for such computation. The Plaintiff failed to answer this part of the question and merely stated that it was "unable to quantify the amount of this monetary relief at this time."  LORIT asks: If not now, when?  How is LORIT to defend and prepare for trial when the Plaintiff conceals the amount of damages it is claiming, its *method and basis* of computation, and the documents on which it relies?  How is the Plaintiff going to prove damages at trial?  If Plaintiff already has all the necessary information to prove damages at trial, why didn't Plaintiff fully answer the damages interrogatories and produce the documents on which it

relies?

As such, Plaintiff's failure to provide *complete* "answers" to the damages interrogatories requires dismissal of the damages claim for each count.  *See* <u>JMJ Enterprises, Inc. v. Via Veneto Italian Ice, Inc.</u>, No. 97-CV-0652, 1998 U.S. Dist. LEXIS 7750, at \*6-7, 12 (E.D. Pa. May 27, 1998)(concluding that the interrogatory responses were "as useful as if [plaintiff] had not responded at all," and such failure to answer interrogatories regarding damages was not only deserving of sanctions, but the only proper outcome was dismissal of claims based on damages).  Moreover, in <u>Cabales v. United States</u>, 51 F.R.D. 498, 499 (S.D.N.Y. 1970), *aff'd* 447 F.2d 1358 (2nd Cir. 1971), it was held that answers to interrogatories which were submitted late and unsigned by the party did not constitute an answer as required by the rule, and that the sanction of dismissal was therefore properly issued by the trial court for the plaintiff's failure to comply with the court's order to answer the interrogatories.

IV.  <u>PLAINTIFF HAS FAILED TO SHOW ANY TRADE SECRETS IN SUPPORT OF COUNTS II, III AND V AND THERE IS NO EVIDENCE THAT LORIT BREACHED THE CABF.</u>

Plaintiff has brought a claim in Count II against LORIT under sections 688.001 *et seq*., Florida Statutes for misappropriation of trade secrets.  To show misappropriation of a trade secret under Florida law, a claimant must prove: (1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy and (2) the secret it possessed was misappropriated. <u>Del Monte Fresh Produce Co. v. Dole Food Co.</u>, 136 F.Supp.2d 1271, 1291 (S.D.Fla.2001); Fla. Stat. § 688.002.  In a trade secret action, the plaintiff bears the burden of demonstrating the specific information it seeks to protect is a trade secret. <u>American Red Cross v. Palm Beach Blood Bank, Inc.</u>, 143 F.3d 1407, 1410 (11th Cir.1998).  Florida's Uniform Trade Secret Act displaces tort law regarding trade

secret misappropriation. See <u>All Pro Sports Camp, Inc. v. Walt Disney Co.</u>, 727 So.2d 363, 367 (Fla. 5th DCA 1999).

To qualify as a trade secret, the information that the plaintiff seeks to protect must derive economic value from not being readily ascertainable by others and must be the subject of reasonable efforts to protect its secrecy. See <u>American Red Cross v. Palm Beach Blood Bank, Inc.</u>, 143 F.3d 1407, 1410 (11th Cir.1998) (applying Florida law); <u>Bestechnologies, Inc. v. Trident Envt. Sys., Inc.</u>, 681 So.2d 1175, 1176 (Fla. 2d DCA 1996) (defining trade secret).  Additionally, if the information in question is generally known or readily accessible to third parties, it cannot qualify for trade secret protection. <u>Del</u> Monte, 136 F. Supp 2d at 1291; <i>See</i> <u>American Red Cross</u>, 143 F.3d at 1410.

In support of Plaintiff's claim of misappropriation, Plaintiff alleges that its final product sample, "Sample 1"[6] and corresponding formula constitute a "trade secret." Plaintiff further alleges that LORIT misappropriated Sample 1 by taking it to another lab and having that lab reproduce or "reverse engineer" Sample 1.  (Pl.'s depo. p. 6, ln. 12 -24). LORIT then allegedly sold the pirated tanning solution as Sevin Nyne.

Plaintiff cannot offer any evidence to support this claim, because, in its own words, the Plaintiff has none. First, Plaintiff testified although no tests were done on the Sevin Nyne product, in Ms. Sunday's opinion  Sevin Nyne was "similar" to Sample 1; not a copy. (Pl.'s depo. p. 7, ln. 7-14). Second, Plaintiff has no evidence that LORIT gave Sample 1 to another lab. (Pl.'s depo. p. 7, ln. 20-23).  In fact, Plaintiff has admitted giving Sample 1 to a third party retailer of tanning products: Sephora. (See Plaintiff's answer to interrogatory 15; Def.'s Exh. 2 to Pl. depo; Pl. depo p. 24) LORIT denies ever giving any samples received from Plaintiff to anyone or any business. Exhibit "A" ¶ 4,5.  Third, Plaintiff doesn't know what lab allegedly reversed engineered her product. (Pl.'s

---

6 For ease of reference, the parties agreed at Plaintiff's deposition to refer to the sample that Plaintiff claims was its misappropriated trade secret as "Sample 1." ( Pl. depo p.10 ln.24-25; p11, ln. 1)

depo. pp. 6-7, ln. 26-6). Fourth, Plaintiff doesn't have the formula used to make Sevin Nyne and Plaintiff has never given the formula for Sample 1 to anyone. Therefore, it is impossible, with the evidence before the Court, to substantiate the claim that Sevin Nyne was copied from Sample 1. (Pl.'s depo. p. 13). Fifth, Plaintiff never tested Sevin Nyne to determine whether Plaintiff's Sample 1 was reversed engineered. (Pl.'s depo. pp. 8 - 10).

In short, Plaintiff has no idea as to whether or not the formula used to make Sample 1 is the same one used to make Sevin Nyne:

Pg 13, Ln 20:   Q      **Now, is the formula you used to create Sample 1 the same formula used by this other lab to produce Sevin Nyne tanning Mist?**

*( Unfounded objections; then same question above is read back)*

Pg 14, Ln 25:   A      I don't know.

Plaintiff's claim for misappropriation of trade secrets under Florida law must fail. Plaintiff cannot satisfy its burden to demonstrate the existence of an actual "trade secret." In particular, Plaintiff has failed to *specifically* describe or provide any evidence as to what "trade secrets" LORIT allegedly misappropriated. Plaintiff has not identified the actual formula its claims is a trade secret. Nor has Plaintiff identified the product sample it now claims is a trade secret. Therefore, LORIT is put in the impossible position of defending against this charge because the Plaintiff has kept its alleged "trade secret" a secret. This is why the law requires a plaintiff to specifically identify what secret was misappropriated; so the claimed secret information can be compared to the alleged copy. In this case, the Plaintiff claims that its formula was misappropriated and reversed engineered and sold as the product Sevin Nyne. Without the Plaintiff's formula and the formula used to create Sevin Nyne it is impossible to compare the two.

11

Moreover, Plaintiff has affirmatively refused to reveal the formula it now claims was misappropriated. During discovery, Plaintiff objected to an interrogatory asking it to identify the formula for the product that Plaintiff claims is a trade secret. (Def. Exh 2 to Pl.s depo).

LORIT denies that that it sent the formula to any other lab and asked them to reproduce it. Exhibit "A" ¶ 4,5. Plaintiff cannot offer any evidence to rebut this LORIT's declaration.

In fact, United One International Laboratories, LLC produced Sevin Nyne. See Declaration of George Mitchell, President of United I attached hereto as Exhibit B. Mr. Mitchell personally developed the Sevin Nyne formula and product. Exhibit "B" ¶ 3. Mr. Mitchell denies copying or reverse engineering (re-producing) any other product during the development of Sevin Nyne. Exhibit "B" ¶ 3. Plaintiff cannot rebut or call into doubt this evidence.

Plaintiff seems to claim in her deposition that the ingredients used to make Sample 1 were also a protected "trade secret." This theory also fails for many reasons. First, Plaintiff knew that the ingredients would enter the public domain because, by law, all of the ingredients had to be listed on all of the cans to be sold to the public. Second, Plaintiff cannot claim the ingredients are a secret that LORIT misappropriated when Plaintiff didn't develop the ingredients on its own; the ingredients was a collaboration between Plaintiff and LORIT. (Pl.'s depo. p. 39). Therefore, the ingredients weren't a secret Plaintiff possessed; the ingredients list didn't exist until Plaintiff got the unique parts from LORIT. Plaintiff admitted that of the 11 ingredients in Sample 1, only 4 are unique and LORIT picked two of those and approved the other; meaning LORIT could have excluded it. (Pl.'s depo. pp. 39; 45). Third, the Plaintiff admits that it sent the ingredient list to Sephora before the product was made available to the public. (Pl.'s depo. pp. 56-59). Plaintiff cannot hold LORIT responsible for such disclosure to third parties. Finally, Plaintiff claims the ingredients were protected from disclosure because of the CABF entered into by the parties. It is an admitted fact that the CABF was

entered into on January 28, 2009. (Complaint Dkt. #1). The ingredient list was finalized on January 27, 2009 and distributed by Plaintiff to many different people.  (Def.'s Exh. 4 to Pl.'s depo). Plaintiff has already agreed that the contract it drafted did not cover any samples or information released before January 28, 2009. (Pl.'s depo p. 31 line 19-25; p.32 line 1-8).  Therefore, because the ingredient list wasn't protected by the CABF, Lorit could not have breached the CABF by disclosing it.

Plaintiff has simply failed to meet its burden of demonstrating the existence of a trade secret.  *See* American Red Cross, 143 F.3d at 1410 ("In a trade secret action, the Plaintiff bears the burden of demonstrating both the specific information it seeks to protect and that it has taken reasonable steps to protect this secrecy.")  Plaintiff's complete failure to indentify the "trade secret" warrants summary judgment in favor of LORIT as to all Counts in the compliant.  PortionPac Chem. Corp v. Sanitach Sys., 217 F. Supp2d 1238, 1252-53 (M.D.Fla. 2002) (granting summary judgment for failure "to allege or provide evidence as to what trade secret Defendants allegedly misappropriated").

Furthermore, LORIT is entitled to summary judgment on Count I, Breach of Contract, because there is no evidence that LORIT gave the ingredient of Sample 1 to anyone.  Moreover, Plaintiff cannot offer sufficient evidence of causation becasue Plaintiff admits to giving Sample 1 and the ingredients list to Sephora.  Finally, the CABF was not effective until January 28, 2009; the day after Plaintiff distributed the final ingredient list. These facts prevent Plaintiff from offering any genuine issue of material fact as to the necessary elements that LORIT breached the CABF or was the *cause* of any damage to Plaintiff.

Plaintiff has also sued LORIT the under Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").  Lorit should prevail for the reasons stated above that support LORIT's motion for summary judgment on the Count II of the Complaint.  In addition, no genuine issue of material fact

13

exists, and Plaintiff cannot produce any evidence of customer confusion or that LORIT has deceived customers or potential customers, as required under the statute.

Subsection 501.204(1), Florida Statutes, declares the following to be unlawful: "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." In construing this subsection, "great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2006." § 501.204(2), Fla. Stat. (2008).

Similarly, to determine whether a "violation of this part" has occurred, a court may look to rules promulgated "pursuant to the Federal Trade Commission Act" and the "standards of unfairness and deception set forth and interpreted by the Federal Trade Commission or the federal courts." § 501.203(3), Fla. Stat. According to the legislature, FDUTPA "shall be construed liberally to promote the following policies":

> (1) To simplify, clarify, and modernize the law governing consumer protection, unfair methods of competition, and unconscionable, deceptive, and unfair trade practices.
> (2) To protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.
> (3) To make state consumer protection and enforcement consistent with established policies of federal law relating to consumer protection.

§ 501.202, Fla. Stat. (2008).

FDUTPA provides that an aggrieved party may initiate a civil action against a party who has engaged in "unfair or deceptive acts or practices in the conduct of any trade or commerce," but it does not define the elements of such an action. *See* § 501.204(1), Fla. Stat. Instead, the statute provides that the Florida courts must give "due consideration and great weight" to Federal

14

Trade Commission and federal court interpretations of section 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C § 45(a)(1). See § 501.204(2), Fla. Stat. According to the federal decisions, a deceptive practice is one that is "likely to mislead" consumers. *See* <u>In re International Harvester Co.</u>, 104 F.T.C. 949 (1984); <u>In the Matter of Cliffdale Assocs., Inc.</u>, 103 F.T.C. 110 (1984); <u>Southwest Sunsites, Inc. v. Federal Trade Comm'n</u>., 785 F.2d 1431 (9th Cir. 1986).

The objective test adopted by the Federal Trade Commission and the federal courts applies, as well, in a suit in state court under the Florida Deceptive and Unfair Trade Practices Act. *See* <u>Millenium Communications & Fulfillment, Inc. v. Office of the Attorney General</u>, 761 So.2d 1256 (Fla. 3d DCA 2000).

There is no evidence that any consumer was deceived. Discovery is closed. Plaintiff has offered no evidence to support its claim of deception. To establish that LORIT violated FTCA Section 5(a) by engaging in deceptive acts or practices in or affecting commerce, Plaintiff ultimately must demonstrate a material representation, omission, or practice that is likely to mislead consumers acting reasonably in the circumstances. *See* <u>FTC v. Pantron I Corp.</u>, 33 F.3d 1088, 1095 (9th Cir.1994); <u>FTC v. World Travel Vacation Brokers, Inc.</u>, 861 F.2d 1020, 1029 (7th Cir.1988); <u>FTC v. Five-Star Auto Club, Inc.</u>, 97 F.Supp.2d 502, 526 (S.D.N.Y.2000). Plaintiff offers no such evidence.

One purpose of the FDUTPA is to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce. Plaintiff has provided no evidence that the consuming public has been harmed. Further, there is no evidence that a "legitimate business enterprise" has been harmed. Neither has Plaintiff put forth any evidence that Plaintiff, has suffered any harm. For the foregoing reasons, LORIT respectfully requests that summary judgment be granted, and Plaintiff's claim be dismissed.

15

## V. PLAINTIFF IS UNABLE TO SHOW A CONSPIRACY

A civil conspiracy requires: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy. Charles v. Fla. Foreclosure Placement Ctr., LLC, 988 So. 2d 1157, 1159-60 (Fla. 3d DCA 2008) (citations omitted).

"A cause of action for civil conspiracy should allege the scope of the conspiracy, its participants, and when the agreement was entered into." Pierson v. Orlando Regional Healthcare Systems, Inc., No. 6:08-cv-466-Orl-28GJK, 2010 WL 1408391, at * 23 (M.D. Fla. Apr. 6, 2010), citing In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig., Nos. 08-01916-MD & 08-20641-CIV-KAM, 2010 WL 432426, at *12 (S.D. Fla. Feb. 4, 2010).

Most importantly, mere conclusory allegations of an "agreement" are not sufficient to state a cause of action for conspiracy. Pierson, 2010 WL 1408391, at *23 (citing MedTech Prods. Inc. v. Ranir, LLC, 596 F. Supp. 2d 778, 795 (S.D.N.Y. 2008) (finding civil conspiracy claim insufficiently plead where the complaint "merely concludes that an agreement [among the defendants] existed without any factual basis to make the allegation plausible."). "A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy." Pierson, 2010 WL 1408391, at *23 (internal quotations and citations omitted).  Simply "rehashing of allegations of individual actions and general allegations of agreement are not sufficient" to meet the pleading standards of Twombly.  Id. at *27.

The requirements governing fraud apply to averments charging conspiracy. Renpak v.Oppenheimer, 104 So.2d 642, 646 (Fla.App.1958); Gair v. Lockhart, 47 So.2d 826 (Fla.1950). The facts must be stated with such particularity as the circumstances may permit; that the allegations of

the complaint should be clear, positive, and specific.

The Plaintiff cannot remotely prove the necessary elements needed to maintain an action of conspiracy against LORIT.  First, Plaintiff has no evidence of any the necessary specific information, such as time, place, manner and scope of conspiracy.  The *only* reasons Plaintiff has for believing LORIT engaged in a conspiracy are the reasons set for in Plaintiff's answer to LORIT's First Set of Interrogatories, no. 6. (Pl. depo. p.21; Ex. 2 to Pl. depo).  In that interrogatory answer, Plaintiff sets forth the total evidence to support this claim: 1) breaching the CABF; 2) copying Plaintiff's product without consent and 3) disclosing Plaintiff's proprietary information without consent.  Plaintiff testified that it had no knowledge as to *when* the agreement to conspire was made, nor of any of the particular parts of the alleged agreement to conspire. (Pl. depo. pp. 21-23).  There is simply no evidence of a conspiracy entered into by LORIT. *See* Raimi v. Furlong, 702 So2d 1273 (Fla. App.3 Dist. 1997).

Moreover, there is no evidence that the other alleged participants to the conspiracy had any knowledge of the conspiracy or that they knowingly participated in it. Plaintiff is engaging in pure speculation as to the existence of a conspiracy. *See* James v Nations Trust Company, 639 So2d 1031 (Fla. App. 5 Dist. 1994).

An actionable conspiracy also requires an underlying tort or wrong. Palmer v. Gotta Have It Golf Collectibles, Inc., 106 F.Supp.2d 1289, 1302-03 (S.D.Fla.2000) (citing Ovadia v. Bloom, 756 So.2d 137, 140 (Fla. 3d DCA 2000) (citations omitted)). "An act which does not constitute a basis for an action against one person cannot be made the basis of a civil action for conspiracy." Buckner v. Lower Fla. Keys Hosp. Dist., 403 So.2d 1025, 1027 (Fla. 3d DCA 1981). Because LORIT should prevail on the misappropriation of trade secrets counts, it  likewise should prevail on the conspiracy count.

17

Finally, LORIT cannot conspire with its own agents.   Lawler v. Eugene Wuesthoff Memorial Hosp. Ass'n., 497 So2d 1261 (Fla. App.5 Dist 1986).  The alleged co-conspirators were Lorit Simon, Lindsay Lohan, Crossheart Productions, Kerry Fitzpatrick, Sean Lampman, Kristi Taylor, Unlock PR and the Loft Agency.  All of these people and entities were agents of LORIT. (Lorit declaration).

Therefore, LORIT's motion for summary judgment should be granted and the conspiracy claim should be dismissed with prejudice.


VI.   PLAINITFF'S FDUTPA CLAIM MUST ALSO FAIL BECAUSE IT IS PREEMPTED BY THE FUTSA

The claim should also be dismissed because it is preempted by FUTSA. According to Defendants, Plaintiff's claim for fraudulent inducement is identical to Plaintiff's claim for misappropriation of a trade secret and essentially is nothing more than an attempt to tack additional causes of action on to a trade secret misappropriation claim in order to avoid the reach of FUTSA.

By its own provisions FUTSA forecloses other tort actions or remedies. FUTSA states in relevant part that it "displace[s] conflicting tort, restitutory, and other law[s] of this state providing civil remedies for misappropriation of a trade secret." Thus, as a general proposition other torts involving the same underlying factual allegations as a claim for trade secret misappropriation will be preempted by FUTSA. In order to pursue claims for additional tort causes of action where there are claims for misappropriation of a trade secret, there must be material distinctions between the allegations comprising the additional torts and the allegations supporting the FUTSA claim. *See also*, Am. Honda Motor Co. v. Motorcycle Info. Network, Inc., 390 F.Supp.2d 1170, 1180-81 (M.D.Fla.2005) (where "the allegations of trade secret misappropriation alone comprise the underlying wrong, only the FUTSA claim will survive the motion to dismiss.").

WHEREFORE, the Defendant, Lorit, LLC respectfully requests that this court grant its motion for summary judgment and enter judgment in this case in LORIT's favor and against the Plaintiff on all counts.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished on this 15th day of June, 2012, by CM/ECF electronic filing to the Clerk of Court and to the following: Craig L. Berman, Berman Law Firm, P.A., Plaza Tower, Ste 706, 111 2nd Ave. NE, St. Petersburg, FL, 33701, Marcia S. Cohen, Law Office of Marcia S. Cohen, P.A., Ste 706, 111 2nd Ave. NE, St. Petersburg, FL, 33701 and Travis R. Hollifield, Hollifield Legal Centre, Ste. C, 147 E. Lyman Avenue, Winter Park, FL, 32789.

/s/ Mitchell L. Fraley
Mitchell L. Fraley
Florida Bar No.: 0132888
MITCHELL L. FRALEY, P.A.
2525 Park City Way
Tampa, Florida 33609
Tel: (813) 229-8300
Fax: (813) 871-1495
mfraley@fraleylawfirm.com
Attorney for LORIT, LLC